## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### (Alexandria Division)

| | |
|---|---|
| **WILLIAM H.G. HUNT, SR.** | ) |
| | ) |
| **Plaintiff** | ) |
| | ) |
| v. | ) **Case No. 1:13CV952-JCC/TCB** |
| | ) |
| **CALHOUN COUNTY BANK, INC.,** | ) |
| | ) |
| **And** | ) |
| | ) |
| **JAMES L. BENNETT** | ) |
| | ) |
| **Defendants** | ) |

## DEFENDANTS' SUPPLEMENTAL MEMORANDUM IN SUPPORT OF THEIR JOINT MOTION TO DISMISS THE COMPLAINT

Pursuant to the Court's Order dated February 25, 2014,  Defendants Calhoun County Bank, Inc. ("Calhoun County Bank" or "Bank") and James L. Bennett ("Mr. Bennett"; together, "Defendants") file this Supplemental Memorandum in Support of the Motion to Dismiss the Complaint ("Motion").  During the February 25, 2014 oral argument on Defendants' Motion, Plaintiff's counsel argued that Calhoun County Bank is subject to jurisdiction in the Commonwealth of Virginia because it operates an interactive website.[1]  As demonstrated below, the plaintiff has failed to meet its burden of establishing that Calhoun County Bank has operated its website so as to subject itself to the sovereign power of a Virginia court.

---

[1] In support, counsel introduced a screenshot from the Bank's webpage dated February 20, 2014. *See* Exhibit 1.  Plaintiff did not attach any screenshots from the Bank's website to its Opposition to the Motion to Dismiss.  At the hearing Plaintiff introduced only the one page and did not introduce any of the landing pages linked to Exhibit 1.

**Argument**

**I.     The Operation of a Website Does Not Provide the Court With Personal Jurisdiction Over Calhoun County Bank**

Personal jurisdiction over persons conducting business on the Internet is determined under a standard that has evolved as necessary to accommodate the nature of the Internet. *Unspam Technologies, Inc. v. Chernuk*, 716 F.3d 322, 328 (4th Cir. 2013).  While the evolution of technology has influenced the standard for establishing personal jurisdiction based on Internet-based contacts with a forum, the fundamental constitutional imperative of due process remains intact.  *Carefirst of Maryland, Inc. v. Carefirst Pregnancy Centers, Inc.*, 334 F.3d 390, 399 (4th Cir.2003).[2]   A defendant outside the forum State must have at least "aimed" its challenged conduct at the forum State.  *Calder v. Jones*, 465 U.S. 783, 789, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984).

The Fourth Circuit has adopted a three-part inquiry to determine whether a defendant is subject to jurisdiction in a State because of its electronic transmissions to that State.  *Chernuk*, 716 F.3d at 328 (affirming district court decision that it lacked personal jurisdiction over foreign banks based on banks Internet activity).  The inquiry considers: "(1) the extent to which the defendant purposely availed itself of the privilege of conducting activities in the State; (2) whether the plaintiffs' claims arise out of those activities directed at the State; and (3) whether

---

[2] The vast majority of Internet-based personal jurisdiction cases involve specific jurisdiction. *Coastal Video Communications, Corp. v. The Staywell Corp.*, 59 F.Supp. 2d 562, 570 (E.D.Va. 1999); *Atlantech Distribution, Inc. v. Credit General Ins. Co.*, 30 F.Supp.2d 534, 536–37 (D.Md.1998); *Mieczkowski v. Masco Corp.*, 997 F.Supp. 782, 785–86 (E.D.Tex.1998); *Zippo Mfg., Co. v. Zippo Dot Com, Inc.*, 952 F.Supp. 1119, 1123–24 (W.D.Pa.1997*).*  Establishing general jurisdiction through the contact over Internet is a high burden. *See Baker v. Patterson Medical Supply*, 4:11-cv-37, 2011 WL 7153984 (Nov. 17, 2011, E.D.Va.) (Court analyzed whether defendant's Internet-based contacts with the forum state constituted conduct creating general jurisdiction in Virginia.)  *See also, Mieczkowski v. Masco Corp.*, 997 F.Supp. 782, 785–86 (E.D.Tex.1998).  This case involves general jurisdiction as the claims asserted are wholly unrelated to internet activity.

the exercise of personal jurisdiction would be constitutionally reasonable." *Bright Mineral Ltd. v. RT Mediasolutions, S.R.O.*, 1:11-cv-935, 2012 WL 1831536 (May 19, 2012, E.D.Va.); *ALS Scan, Inc. v. Digital Serv. Consultants*, Inc., 293 F.3d 707, 712 (4th Cir.2002) (internal quotation marks and alteration omitted).

### 1. Calhoun County Bank's Website Is Passive

The interactivity of a defendant's website can be a threshold factor in determining whether a defendant is subject to personal jurisdiction in a state where it has no physical presence. The United States Court of Appeals for the Fourth Circuit requires that a court distinguish among interactive, semi-interactive, and passive websites when determining whether it has personal jurisdiction over the defendant based on defendant's operation of a website. *Carefirst*, 334 F.3d at 399,[3] citing *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F.Supp. 1119, 1124 (W.D.Pa.1997).[4] However, a website's interactivity alone cannot satisfy the due process

---

[3] In *Carefirst,* the plaintiff was a Maryland insurance company and alleged that the defendant Care First Pregnancy Centers, Inc. infringed on its mark through a web hosting service which contained the "Carefirst" name. The defendant through the website, among other things, solicited donations, provided educational material, medical references, and promoted counseling services. With respect to donations, the website provided for direct credit card payments. In ten years, the defendant received $1,542.00, or about 0.0174% of its total donations, from Maryland residents. The court found this website activity insufficient to establish personal jurisdiction over the defendant in the State of Maryland.

[4] When a defendant runs an interactive site, through which he "enters into contracts with residents of a foreign jurisdiction that involve the knowing and repeated transmission of computer files over the Internet," he can properly be haled into the courts of that foreign jurisdiction. *Id*. If, by contrast, the defendant's site is passive, in that it merely makes information available, the site cannot render him subject to specific personal jurisdiction in a foreign court. *Id*. Occupying a middle ground are semi-interactive websites, through which there have not occurred a high volume of transactions between the defendant and residents of the foreign jurisdiction, yet which do enable users to exchange information with the host computer. Zippo, 954 F.Supp. at 1124. In case of semi-interactive websites, the exercise of jurisdiction is determined by examining the level of interactivity and commercial nature of the exchange of information that occurs. *Id*.

inquiry; instead the court must, from an elevated viewpoint, consider a defendant's "manifested intent" and purposeful targeting of the forum. *RT Mediasolutions*, 2012 WL 1831536 at *4, citing *Graduate Mgmt.*, 241 F.Supp.2d at 594.  In other words, in addition to a certain level of interactivity of a website, the Fourth Circuit also requires that the alleged interactivity purposefully target the particular forum seeking to exercise jurisdiction over the defendant. *Graduate Mgmt.*, 241 F.Supp.2d at 594 (internal citation omitted).  The Eastern District of Virginia has recently noted that "[a]s technology … continue[s] to evolve, so must the understanding of due process and the meaning of purposeful availment. *RT Mediasolutions*, 2012 WL 1831536 at *4.  Thus, although the original *Zippo* test focused on the "the nature and quality of commercial activity that an entity conducts over the Internet," *see Graduate Mgmt*., 241 F.Supp.2d at 594 (quoting *ALS Scan*, 293 F.3d at 713), the *ALS Scan* test modifies the *Zippo* test by emphasizing the "requirement of *purposeful* targeting of a particular forum, not just the level of interactivity." *RT Mediasolutions*, 2012 WL 1831536 at *4 ("The Fourth Circuit test does not abandon the concern with the nature and quality of the commercial activity—this too serves as an indicium of purposeful availment.") citing *Graduate Mgmt.*, 241 F.Supp.2d at 594 (italics in original).  .

Accordingly, a court may, consistent with due process, exercise judicial power over a person outside of the State when that person (1) directs electronic activity into the State, (2) with the manifested intent of engaging in business or other interactions within the State, and (3) that activity creates, in a person within the State, a potential cause of action cognizable in the State's courts. *ALS Scan,* 293 F.3d at 714.

Calhoun County Bank stated in its Motion to Dismiss that it operates a passive website and a website of this kind "that does little more than make information available to those who are

interested in it is not grounds for the exercise [of] personal jurisdiction." *See* MTD at p. 12,

citing to *Telco Communications v. An Apple A Day*, 977 F. Supp. 404, 406 (E.D. Va. 1997)

(Cacheris J).[5]  It has not changed the website so as to make it interactive.  *See* Bennett Decl. at

¶7.  None of the online banking activities are purposefully targeting Virginia or any other out-of-

state residents.  *See Black & Decker (U.S.) Inc. v. Pro-Tech Power Inc*., 26 F.Supp.2d 834

(E.D.Va. 1998) (Cacheris J).  *Black & Decker* does not require a finding that the Bank's

maintenance of a website constitutes a sufficient basis for personal jurisdiction over the Bank.  In

*Black & Decker*, the plaintiff alleged that the website was used to perpetuate trademark

infringement and related intellectual property violations, and the Court found that the Virginia

long-arm was satisfied.[6]  However, the Court ruled that the constitutional prong of the analysis

was not met because there was nothing more than this solicitation, and '[t]he placement of a

product into the stream of commerce ... is not an act ... [that is] purposefully directed toward the

forum State.'"  *Id.* at 843.  Similarly here, Calhoun County Bank does not conduct business or

solicit customers outside of West Virginia through its website.[7]  *Id.* at ¶2.  It has never intended

---

[5] The facts of *Telco Communications* are distinguishable from the facts present here.  In *Telco Communications*, the Defendants were Missouri residents accused, *inter alia*, of publishing defamatory press releases on their website.  The court found that the Defendants conducted defamatory advertising over the Internet, which could be accessed by a Virginia resident 24 hours a day.  Accordingly, the court found that the Defendants regularly engaged in defamatory conduct for purposes of specific jurisdiction pursuant to the long-art statute.  There is no similar nexus between the wrongs alleged by the plaintiff here and the content or potential use of the Bank's website.

[6] The court concluded that defendants "regularly solicit business in [Virginia] insofar as each of them advertises their products on World Wide Web sites, because [t]he sites are accessible to any Virginia resident over the Internet, and they provide interested customers with the companies' e-mail addresses."  26 F.Supp.2d at 842.

[7] Federal Regulations make it difficult for the Bank to open an account for a person that resides out of state.  A potential customer cannot open an account or do any business without first coming to one of the bank's physical locations.  In accordance with the Patriot Act of 2001, a

the website to serve as a means of soliciting customers from outside of West Virginia.  *Id.; see infra* Section II.

The website can be accessed for informational purpose and it targets customers in the Bank's market area: Calhoun, Gilmer and Wirt Counties West Virginia and contiguous counties which include Roane, Ritchie, Lewis and Wood Counties.  Bennett Decl. at ¶3.  Although the website allows existing customers to engage in online banking, *e.g.*, pay bills, before registering for Internet Banking, the customer needs to have an account with Calhoun County Bank, and that requires appearing at a bank branch in West Virginia.[8]  *Id.* at ¶¶4-6.  For specific information on opening a new account, the website directs interested people to contact their local branch.  Bennett Decl. at ¶5.  The Bank has never allowed potential customers to open new accounts via the website. *Id.; see infra* Section II.

Online banking allows existing customers to engage in rudimentary account management through the Internet.  *Id.* at ¶6.  Any existing or prospective customers will still need to go to one of the bank's local offices for bank services such as applying for a bank loan or mortgage.  *Id.* ¶7.  Plaintiff attaches significance to the website allowing for bill payment via the Internet.  However, this is no different than paying bills through a standard checking account.  An account holder can write a check, or send a check to a payee, in any state in the country.  The use of a check in a foreign jurisdiction does not mean the issuing financial institution is availing itself to

---

person with an out of state driver's license requesting to open account triggers the filing of a suspicious activity report under the Bank Secrecy Act.  Bennett Decl. at ¶9.

[8] Plaintiff's counsel suggested at the hearing that the fact that the website has links for the Auto Loans, it targets anyone outside West Virginia, including residents of Virginia. Yet, if the plaintiff's counsel would have clicked on the Auto Loan link it would have seen that interested people must contact their local branch.

the courts in said states.  Finally, there are no Virginia residents who became Calhoun County Bank's customers through the bank's website.  *Id.* ¶8.

### 2.  There Is No Nexus Between Calhoun County Bank's Website and Plaintiff's Cause of Action

Moreover, regardless of how interactive Calhoun County Bank's website is, it can form the sole basis for personal jurisdiction only if there is nexus between the website and the specific causes of action pled by the Plaintiff.  If the plaintiff cannot prove the nexus, the contacts through the website must be so substantial that they may be considered "systematic and continuous" for the purpose of general jurisdiction.[9]  *RT Mediasolutions*, 2012 WL 1831536 at *5, FN 8 (internal citation omitted); *see also See Baker v. Patterson Medical Supply*, 4:11-cv-37, 2011 WL 7153984 (Nov. 17, 2011, E.D.Va.).  In *Patterson Medical Supply* this Court found that there was no general jurisdiction over defendants based on two isolated sales to Virginia corporations plus a minimally interactive website.  The Court concluded that although defendant's website was interactive and accessible in Virginia, because visitors cannot purchase products on the site, and only one Virginia resident has requested a catalog via the site, plaintiff failed to make out a *prima facie* case that exercising jurisdiction over defendants was constitutional in the absence of additional evidence demonstrating that they have engaged in continuous and systematic contacts with Virginia.  *Patterson Medical Supply*, 2011 WL 7153948, citing *ASL Scan*, 293 F.3d 707, 715 ("[a] state may not obtain general jurisdiction over an out-of-state defendant based on the fact that residents of that state regularly access the

---

[9] In the Complaint, Plaintiff argues specific jurisdiction over Calhoun County Bank because of its Internet activity.  *See* Va. Code § 8.01-328.1(A)(1); Compl. at ¶2 ("Defendant Calhoun County Bank ...is engaged in business in Virginia via the internet.").  However, in the Opposition to Defendant's Motion to Dismiss, the Plaintiff mirrors the language of the specific jurisdiction statute, Virginia Code section 8.01-328.1(A)(1)(2)(3) and (4).  *See* Opp. at p. 3.

defendant's passive website") and *Chiaphua Components Ltd. v. W. Bend Co.*, 95 F.Supp.2d 505, 512 (E.D.Va.2000) ("Given that [Defendant] is not primarily an Internet-based company and a lack of significant Virginia contacts with the Internet site, the court is unwilling to accord undue weight to the fact of an Internet presence by the Defendant.").

Here, the Plaintiff fails to meet this burden: there is no substantial connection between five Virginia residents potentially accessing their online banking accounts and the underlying breach of purported oral contract between Mr. Bennett and the Plaintiff, and/or the actual and constructive fraud claim. Accordingly, exercising jurisdiction over it is inconsistent with the Virginia long-arm statute and runs afoul of the *International Shoe* standard because it would offend "traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158 (1945)).

## II. Personal Jurisdiction is Determined Based Only on The Facts at the Time Plaintiff's Claim Accrued

It is axiomatic that "[o]nly contacts occurring prior to the event causing the litigation may be considered" for purposes of establishing specific personal jurisdiction." *American Association of Blood Banks v. Boston Paternity, LLC*, Civil Action No. DKC 2008-2046, 2009 WL 2366175 (July 29, 2008, D. Md.); *see also Johnson v. Woodcock*, 444 F.3d 953, 955 (8th Cir., 2006) (noting minimum contacts must exist at the time the cause of action arose, the time suit was filed, or within a reasonable period of time immediately before the suit was filed), cert. denied, 549 U.S. 883, 127 S.Ct. 217, 166 L.Ed.2d 145 (2006); *Klinghoffer v. S.N.C. Achille Lauro*, 937 F.2d 44, 52 (2d Cir.1991) (noting "personal jurisdiction depends on the defendant's contacts with the forum state at the time the lawsuit was filed"). The Court should limit its analysis only to facts that existed at the time Plaintiff's alleged claims arouse and Plaintiff's effort to rely on a February 20, 2014 screen shot should be disregarded.

Even if the current version of the website does not expressly limits the bank's services to residents of West Virginia, the court should use the website in its 2008 version.

### III.     Conclusion

Therefore, for the reasons set forth above, and in Defendants' Motion to Dismiss, and Memorandum of Points and Authorities, Defendants respectfully request that the Court dismiss the Complaint with prejudice, and award them any other and further relief that Court deems just and proper.

<div style="margin-left:40%;">

Respectfully submitted,

</div>

Dated:  March 5, 2014                               ____/s/_____
                                                    Kevin B. Bedell (Va. Bar No. 30314)
                                                    E-mail:  bedellk@gtlaw.com
                                                    Greenberg Traurig, LLP
                                                    1750 Tysons Boulevard, Suite 1200
                                                    McLean, VA 22102
                                                    Tel:  (703) 749-1339
                                                    Fax:  (703) 714-8339

                                                    Sanford M. Saunders, Jr. (*pro hac vice*)
                                                    Greenberg Traurig, LLP
                                                    2101 L Street, N.W., Suite 1000
                                                    Washington, DC 20037
                                                    Tel:     (202) 331-3100
                                                    Fax:     (202) 331-3101

                                                    *Counsel for Defendants*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 5th day of March, 2014, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

>Stephanie S. Ryan, Esq.
>Ryan Law PLLC
>5476 Union Mill Rd. #120
>Clifton, VA 20124
>sryan@ryanlawpllc.com
>
>*Attorney for Plaintiff*

>___/s/_____
>Kevin B. Bedell (Va. Bar No. 30314)
>E-mail:  bedellk@gtlaw.com
>Greenberg Traurig, LLP
>1750 Tysons Boulevard, Suite 1200
>McLean, VA 22102
>Tel:  (703) 749-1339
>Fax:  (703) 714-8339
>
>*Counsel for Defendants*