IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

WILLIAM H.G. HUNT, SR.,           )
                                  )
      Plaintiff,                  )
                                  )
      v.                          )     1:13cv952 (JCC/TCB)
                                  )
CALHOUN COUNTY BANK, INC.,        )
                                  )
and                               )
                                  )
JAMES L. BENNETT                  )
                                  )
      Defendants.                 )

**M E M O R A N D U M   O P I N I O N**

This matter is before the Court on Defendants Calhoun County Bank, Inc. ("Calhoun County Bank") and James L. Bennett's ("Bennett"; together "Defendants") Joint Motion to Dismiss ("Motion"). [Dkt. 7.]  For the following reasons the Court will grant Defendants' Motion to Dismiss.

**I.   Background**

This case arises out of an alleged breach of the contractual relationship between Plaintiff William H.G. Hunt, Sr. ("Hunt") and Defendants and the alleged fraudulent misrepresentation by Defendant Bennett.

A.   Factual Background

Calhoun County Bank is a West Virginia Corporation, which Plaintiff alleges conducts business and has depositors in

1

Virginia.  (Compl. [Dkt. 1] ¶ 2.)  Defendant Bennett is the President of Calhoun County Bank and a member of its Board of Directors.  (Compl. ¶ 3.)  Plaintiff is a citizen and a resident of Virginia.  (Compl. ¶ 1.)

According to the Complaint, on or about June 1, 2007, Hunt entered into a contract with Calhoun County Bank through its agent Bennett.  Pursuant to this contract, Calhoun County Bank agreed to sell to Hunt certain royalty interests that were in the custody of Calhoun County Bank for the sum of $40,000.00. (Compl. ¶ 8.)  Hunt alleges that in June 2007, he transferred $40,000.00 to an agent of Calhoun County Bank.  (Compl. ¶ 9.) Calhoun County Bank, however, refused to transfer ownership of the royalty interests, in contravention of the contract. (Compl. ¶ 9.)  Plaintiff avers that he has suffered damages in excess of $180,000.00 and seeks specific performance of the contract, or in the alternative, compensatory damages.  (Compl. ¶ 11.)  Plaintiff further alleges that Bennett fraudulently misrepresented his intention to transfer the royalty interests to Hunt.  (Compl. ¶ 13.)

On October 11, 2007, Plaintiff filed a complaint in the Circuit Court of Loudoun County alleging breach of contract and constructive fraud with the same factual basis as this action.  (Def. Mem. [Dkt. 8-3] Ex. C.)  On February 11, 2013, the Circuit Court of Loudoun County granted Plaintiff's Motion

for Nonsuit pursuant to § 8.01-380 of the Code of Virginia. (Def. Mem. [Dkt. 8-4] Ex. D.)

      B.   <u>Procedural Background</u>

      On August 6, 2013, Plaintiff filed his Complaint against Defendants Calhoun County Bank and Bennett seeking damages based on theories of breach of contract and fraud. [Dkt. 1.]  On December 23, 2013, Defendants filed their Motion to Dismiss and accompanying memorandum of law.  [Dkts. 7-8.] Plaintiff filed his opposition on December 27, 2013.  [Dkt. 10.] On January 2, 2014, Defendants filed their reply.  [Dkt. 11.] The Court held a hearing on Defendants' Motion to Dismiss on February 25, 2014.  [Dkt. 16.]  During the hearing, Plaintiff submitted an exhibit regarding the electronic services offered on Calhoun County Bank's website.  This exhibit consists of a screenshot of Calhoun County Bank's website dated February 20, 2014.  [Dkt. 17-1.]  The Court ordered Defendant to file a response regarding Plaintiff's exhibit within one week.  On March 5, 2014, Defendants filed their Supplemental Memorandum in Support of Their Joint Motion to Dismiss the Complaint.  [Dkt. 17.]  On March 10, 2014, Plaintiff filed his Supplemental Memorandum in Opposition to Defendants' Motion to Dismiss. [Dkt. 18.]

      Defendants' Motion to Dismiss is before the Court.

## II.   Standard of Review

### A.   Personal Jurisdiction

Federal Rule of Civil Procedure 12(b)(2) permits dismissal of an action where the Court lacks personal jurisdiction over the parties.  The plaintiff bears the burden of demonstrating personal jurisdiction by a preponderance of the evidence once its existence is questioned by the defendant. *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989).  When a district court decides a pretrial personal jurisdiction dismissal motion without an evidentiary hearing, however, the plaintiff need only prove a prima facie case of personal jurisdiction.  *Mylan Labs., Inc. v. Akzo, N.V.*, 2 F.3d 56, 60 (4th Cir. 1993); *Combs*, 886 F.2d at 676.  In deciding whether the plaintiff has proved a prima facie case, the district court must draw all reasonable inferences arising from the proof, and resolve all factual disputes in the plaintiff's favor.  *Combs*, 886 F.2d at 676; *Wolf v. Richmond Cnty. Hosp. Auth.*, 745 F.2d 904, 908 (4th Cir. 1984), *cert. denied*, 474 U.S. 826 (1985).

### B.   Failure to State a Claim

Rule 12(b)(6) allows a court to dismiss those allegations which fail "to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  A 12(b)(6) motion tests the legal sufficiency of the complaint.  *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008).  A court reviewing a

4

complaint on a 12(b)(6) motion must accept well-pleaded allegations as true and must construe factual allegations in favor of the plaintiff. *See Randall v. United States,* 30 F.3d 518, 522 (4th Cir. 1994).

A court must also be mindful of the liberal pleading standards under Rule 8, which require only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8. While Rule 8 does not require "detailed factual allegations," a plaintiff must still provide "more than labels and conclusions" because "a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007) (citation omitted).

To survive a 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to meet this standard, *id.*, and a plaintiff's "[f]actual allegations must be enough to raise a

5

right to relief above the speculative level . . . ."  *Twombly*,
550 U.S. at 555.   Moreover, a court "is not bound to accept as
true a legal conclusion couched as a factual allegation."
*Iqbal*, 556 U.S. at 678.

C.   Rule 9(b)

Rule 9(b) imposes a heightened pleading standard for
fraud claims.   Fed. R. Civ. P. 9(b).   "In alleging fraud or
mistake, a party must state with particularity the circumstances
constituting fraud or mistake.   Malice, intent, knowledge, and
other conditions of a person's mind may be alleged generally."
Fed. R. Civ. P. 9(b).   To satisfy the heightened pleading
standard of Rule 9(b), a plaintiff must state with particularity
"the time, place, and contents of the false representations, as
well as the identity of the person making the misrepresentation
and what he obtained thereby."  *In re Mut. Funds Inv. Litig.*,
566 F.3d 111, 120 (4th Cir. 2009) (quoting *Harrison v.
Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir.
1999)), *rev'd sub nom. on other grounds, Janus Capital Grp.,
Inc. v. First Derivative Traders*, 131 S. Ct. 2296 (2011).

### III.   Analysis

Defendants argue that Plaintiff's Complaint should be
dismissed pursuant to Federal Rule of Civil Procedure 12(b)(2),
Federal Rule of Civil Procedure 12(b)(6), Federal Rule of Civil

Procedure 9(b) and Local Rule 7.  The Court will consider each in turn.

    A.    Motion to Dismiss for Lack of Personal Jurisdiction

    To establish jurisdiction over a non-resident, this Court must consider first whether jurisdiction is authorized by Virginia law, and then whether the exercise of jurisdiction comports with the due process requirements of the Fourteenth Amendment to the United States Constitution.  *Consulting Eng'rs Corp. v. Geometric, Ltd.*, 561 F.3d 273, 277 (4th Cir. 2009); Fed. R. Civ. P. 4(e)-(f).  As Virginia's general long-arm statute extends personal jurisdiction to the fullest extent permitted by due process, "the statutory inquiry merges with the constitutional inquiry."  *English & Smith v. Metzger*, 901 F.2d 36, 38 (4th Cir. 1990); Va. Code Ann. § 8.01-328.1.  As a result the Court need only undertake one inquiry to determine whether the exercise of jurisdiction here comports with the Fourteenth Amendment's due process requirements.[1]

    There are two types of personal jurisdiction that meet the requirements of due process.  *Burger King Corp. v.*

---

[1] The United States Court of Appeals for the Fourth Circuit has noted that it is possible for a defendant's contacts with Virginia to "satisfy due process but not meet the specific grasp of the Virginia long-arm statute provision." *New Wellington Fin. Corp. v. Flagship Resort Dev. Corp.*, 416 F.3d 290, 294 n.6 (4th Cir. 2005).  Because the Court finds that exercising jurisdiction over Calhoun County Bank and Bennett is inconsistent with due process, it is unnecessary to determine whether Defendants' activities satisfy the narrower reach of Virginia's long-arm statute. *See Prototype Prods., Inc. v. Reset, Inc.*, 884 F. Supp. 2d 691, 701 (E.D. Va. 2012).

*Rudzewicz*, 471 U.S. 462 (1985). First, specific jurisdiction exists when a defendant has sufficient "minimum contacts" with the forum state such that "the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945). To meet this minimum contacts test, the plaintiff must show that a defendant "'purposefully directed his activities at the residents of the forum' and that the litigation results from alleged injuries that 'arise out of' those activities." *Burger King,* 471 U.S. at 472 (citations omitted). Second, general jurisdiction exists for claims entirely distinct from the defendant's in-state activities when a defendant's activities in the state have been "continuous and systematic." *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 & n.9 (1984).

As an initial matter, the Court rejects Plaintiff's argument that Defendants failed to make a special appearance and therefore submitted to the jurisdiction of this Court. "Federal law and Virginia state law differ in their approaches for determining when a party waives the personal jurisdiction defense through an appearance. Virginia steadfastly adheres to the traditional general and special appearance doctrine." *Xyrous Commc'ns, LLC v. Bulgarian Telecomm. Co., AD*, No. 1:09cv396, 2009 WL 2877084, at *3 (E.D. Va. Sept. 4, 2009).

8

Under Federal Rule of Civil Procedure 12(b), however, "the distinction between general and special appearances in federal practice has been abolished." *Davenport v. Ralph N. Peters & Co.*, 386 F.2d 199, 204 (4th Cir. 1967).  Defendant has not submitted to the jurisdiction of this Court by filing a motion under Rule 12(b).  The Court therefore moves to the question of whether there is specific jurisdiction over Defendants.

### 1.   Due Process Analysis for Specific Jurisdiction

In analyzing due process requirements for asserting specific jurisdiction, the Fourth Circuit has set out a three part test in which the Court must consider, in order, "(1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the state; (2) whether the plaintiffs' claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable." *Consulting Eng'rs Corp.*, 561 F.3d at 279 (citing *ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707, 712 (4th Cir. 2002)).

### i.   Extent Defendants Purposefully Availed Themselves of Forum

In assessing the first prong of the test, courts in the Fourth Circuit consider a variety of nonexclusive factors in determining whether a defendant has purposefully availed himself of the forum at issue. *Consulting Eng'rs Corp.*, 561 F.3d at

9

278.    "In a business context, these factors may include: (1) whether the defendant maintains offices or agents in the forum state; (2) whether the defendant owns property in the forum state; (3) whether the defendant reached into the forum state to solicit or initiate business; (4) whether the defendant deliberately engaged in significant or long-term business activities in the forum state; (5) whether the parties contractually agreed that the law of the forum state would govern disputes; (6) whether the defendant made in-person contact with the resident of the forum in the forum state regarding the business relationship; (7) the nature, quality and extent of the parties' communications about the business being transacted; and (8) whether the performance of contractual duties was to occur within the forum."  *5EI, LLC v. Take Action Media, Inc.*, No. 1:12cv492, 2012 WL 4105131, at *5 (E.D. Va. Sept. 17, 2012).

        Considering these factors and the case at hand overall, the Court concludes that Plaintiff has not presented sufficient evidence that Defendants Calhoun County Bank and Bennett purposefully availed themselves of Virginia in their interactions with Plaintiff.  Factors (1), (2) and (6) do not support a finding that Defendants purposefully availed themselves of the benefits and protections of Virginia's laws because there are no allegations regarding any physical presence

10

in Virginia via offices, agents, property or in-person contact. Calhoun County Bank is a community bank located in West Virginia. (Bennett Aff. [Dkt. 8-1] ¶ 4.) Calhoun County Bank has three branches, each of which is located in West Virginia. (*Id.*) Calhoun County Bank has never operated a bank branch in the Commonwealth of Virginia; neither the bank nor Bennett conducts any other business in the Commonwealth. (*Id.* ¶ 5.)

Likewise, the other factors do not support a finding that either Defendant has engaged in purposeful conduct towards Virginia. Regarding factors (3) and (4), Plaintiff does not allege that Defendants reached into Virginia to initiate business with him via in-person or electronic contacts. Instead, as Defendant argues, Plaintiff initiated contact with Defendants via his West Virginia Counsel. (Def. Mem. at 10.) Likewise, the alleged contract was negotiated between Bennett and Plaintiff's attorney, Jeff Taylor, who is located in Fairmont, West Virginia. (Bennett Aff. ¶ 9.) Moreover, the alleged contract at issue in this case would not have resulted in Defendants' performance of significant or long-term business activity in Virginia. The alleged contract concerned the transfer of rights and interests in property located in West Virginia. (Bennett Aff. ¶ 9.)

ii.  Whether Plaintiff's Claims Arise out of
Defendants' Virginia Activities

The second prong of the Fourth Circuit's due process test requires a plaintiff's claims to arise out of the defendant's contacts with the forum state.  Plaintiff's claims arise out of an alleged contract executed with Calhoun County Bank.  Plaintiff claims that Calhoun County Bank and its agent Bennett breached this contract and that Bennett misrepresented his intention to honor this contract.  Plaintiff's claims do not arise out of any of the Defendants' contacts with Virginia.

Likewise, while Plaintiff points to Calhoun County Bank's website as a basis of jurisdiction, Plaintiff's cause of action did not arise out of Defendants' online activities.  The Fourth Circuit has adopted a modified version of the *Zippo* sliding scale for defining when electronic contacts with a state constitute sufficient purposeful conduct.  *See Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119, 1124 (W.D. Pa. 1997). Under this standard, jurisdiction is appropriate and consistent with due process when the person "(1) directs electronic activity into the State, (2) with the manifested intent of engaging in business or other interactions within the State, and (3) that activity creates, in a person within the State, a potential cause of action cognizable in the State's courts." *ALS Scan*, 293 F.3d at 714.

12

Here, Calhoun County Bank appears to maintain a semi-interactive website.  *See Carefirst of Md. Inc. v. Carefirst Pregnancy Cntrs, Inc.*, 334 F.3d 390, 400 (4th Cir. 2003) (finding that websites are semi-interactive where they "contain features that make it possible for a user to exchange information with the host computer").  Calhoun County Bank's website allows existing customers to engage in online banking activities, (Calhoun Banks Online Banking [*see* Dkt. 17-1]), but does not allow potential customers to open new accounts and was not intended to solicit customers from outside West Virginia. (Bennett Decl. [Dkt. 17-2] ¶¶ 4, 5.)[2]

Regardless of the level of interactivity of Calhoun County Bank's website, however, Plaintiff's claims here bear no relation to these online banking services.  Under the third prong of the test set forth in *ALS Scan*, the internet activity at issue must create the potential cause of action.  293 F.3d at 714.  In this case, Plaintiff's cause of action stems from transactions wholly independent of Calhoun County Bank's online services.[3]

---

[2] Defendants argue that the Court should look to Calhoun County Bank's website as it existed in 2008, not February 20, 2014.  (Def. Supp. Mem. at 8-9.) Because Plaintiff's jurisdictional claims arising out of Calhoun County Bank's online activities fail even considering the bank's 2014 activities, the Court will not further consider this argument.

[3] Plaintiff cites to *Telco Commc'ns v. An Apple A Day*, 997 F. Supp. 404 (E.D. Va. 1997), *Maritz, Inc. v. Cybergold Inc.*, 947 F. Supp. 1328 (E.D. Mo. 1996) and *Inset Sys, Inc. v. Instruction Set.*, 937 F. Supp. 163, 165 (D. Conn. 1996) in support of the proposition that Calhoun County Bank's website provides this Court with a basis for exercising specific jurisdiction.  (Pl.

iii.   <u>Whether Exercise of Personal Jurisdiction is
Constitutionally Reasonable</u>

Finally, under the third prong of the Fourth
Circuit's test, a Court may consider "additional factors to
ensure the appropriateness of the forum once it has determined
that a defendant purposefully availed itself" of the forum.
*Consulting Eng'rs Corp.* 561 F.3d at 279.  Because the Court
finds that Defendants have not purposefully availed themselves
of the forum, further consideration of the appropriateness of
Virginia as a forum state is unnecessary.

2. <u>General Jurisdiction</u>

Having found that there is not specific jurisdiction
over Defendants, the Court moves to the question of general
jurisdiction.  In support of its claim to general jurisdiction,
Plaintiff alleges that Calhoun County Bank "conducts business
and has depositors in Virginia and is engaged in business in
Virginia via the Internet." (Compl. ¶ 2.)  Bennett's affidavit
relates that Calhoun County Bank does not market itself outside
of the state of West Virginia, nor does it advertise in media
directed at customers outside of the West Virginia counties in

---

Supp. Mem. in Opp. at ¶ 4.)  All three of these cases, however, involve
instances where the plaintiff's claim arose out of the defendant's online
presence.  In *Telco* defendant was posting allegedly defamatory press releases
online.  *Telco*, 997 F. Supp. at 406.  In *Maritz* and *Inset Systems*, the claim
at issue was trademark infringement in connection with internet activities.
*Maritz*, 947 F. Supp. at 1329; *Inset Sys.*, 937 F. Supp. at 162.  Here, by
contrast, there is no relationship between Plaintiff's claim and Defendants'
online presence.

which it currently operates.  (Bennett Aff. ¶ 6.)  The affidavit further states that in 2007, the time the contract was allegedly formed, Calhoun County Bank had nine borrowers residing in Virginia.  (Bennett Aff. ¶ 7.)  Of those nine, five borrowers resided in West Virginia at the time they took out their loans and subsequently moved to Virginia.  The other four loans were used to purchase real estate in West Virginia.  (*Id.*)  These purchasers "sought out Calhoun County Bank for loan(s) to fund their respective purchases and traveled to West Virginia to consummate their respective loans."  (*Id.*)  Plaintiff does not challenge these assertions.

Accordingly, the Court finds that Defendants did not engage activities sufficiently "continuous and systematic" to support an exercise of general jurisdiction.  *Helicopteros Nacionales de Colombia, S.A,* 466 U.S. at 414.  Calhoun County Bank's relationships with Virginia depositors originated only upon the actions of these depositors.  Moreover, all of these loans were made to individuals either residing in West Virginia or were for use in the purchase of West Virginia property.

Additionally, the Court notes that Defendants' online banking services do not provide a basis for general jurisdiction.  In *ALS Scan*, the Fourth Circuit stated:

> We are not prepared at this time to recognize that a State may obtain general jurisdiction over out-of-state persons who

regularly transmit electronic signals into
the State via the Internet solely on those
transmissions.  Something more would have to
be demonstrated.

293 F.3d at 715.  Plaintiff has not made any showing that

Calhoun County Bank's banking online activities come close to

demonstrating "something more" such that the Court's exercise of

general jurisdiction would be constitutionally permissible.  *See*

*also Baker v. Patterson Med. Supply, Inc.*, No. 4:11cv37, 2011 WL

7153948, at *8 (E.D. Va. Nov. 17, 2011) (finding that plaintiff

cannot make out a prima facie case for general jurisdiction over

out-of-state defendant based upon defendant's minimally

interactive website).

     B.    <u>Motion to Dismiss for Failure to State a Claim</u>

       1.   <u>Statute of limitations</u>

Defendant further argues that Plaintiff's claims are

barred by the statute of limitations.  Under Virginia law,

questions regarding the statute of limitations are "deemed to be

procedural and as such are controlled by the law of the forum."

*Barry v. Donnelly*, 781 F.2d 1040, 1042 n.3 (4th Cir. 1986).

This Court will apply Virginia statute of limitations law.

Plaintiff's Complaint contains two causes of action:

(1) breach of contract; (2) fraud.  The statute of limitations

for breach of any unwritten contract, express or implied, is

three years.  Va. Code § 8.01-246(4).  In Virginia, a claim of

16

fraud or misrepresentation must be brought within two years after the cause of action accrues.  Va. Code § 8.01-243(A).  A cause of action for fraud or misrepresentation accrues when the fraud "is discovered or by the exercise of due diligent reasonably should have been discovered."  Va. Code § 8.01-249(1).  Based on the filing of Plaintiff's suit in Loudoun County Circuit Court, Plaintiff's fraud cause of action could have accrued no later than October 2007.  (Def. Mem. Ex. B.)

Plaintiff's claims are not time-barred, however, because of the operating of a tolling provision under Virginia law.  Virginia Code § 8.01-229E3 provides:

> If a plaintiff suffers a voluntary nonsuit as prescribed in § 8.01-380, the statute of limitations with respect to such action shall be tolled by the commencement of the nonsuited action, and the plaintiff may recommence his action within six months from the date of the order entered by the court, or within the original period of limitation as provided by subdivision B 1, whichever period is longer.  This tolling provision shall apply irrespective of whether the action is originally filed in a federal or a state court and recommenced in any other court . . . .

Section 8.01-380A states, "[a]fter a nonsuit no new proceeding on the same cause of action or against the same party shall be had in any court other than that in which the nonsuit was taken unless that court is without jurisdiction, or not a proper venue, or other good cause is shown for proceeding in another

17

court, or when such new proceeding is instituted in a federal court." Va. Code § 8.01-380A. Plaintiff's Motion for Nonsuit pursuant to § 8.01-380 was granted on February 11, 2013. He instituted the present action on August 6, 2013, within the six-month period provided for in § 8.01-229E. Therefore, Plaintiff's Complaint was timely filed.

Defendant cites to *Yarber v. Allstate Ins. Co.*, 674 F.2d 232 (4th Cir. 1982) in support of the proposition that this tolling provision is inapplicable because Plaintiff first filed in state court and subsequently refiled in federal court. *Yarber*, however, was decided under a previous version of Virginia's nonsuit provision. *See Sherman v. Hercules, Inc.*, 636 F. Supp. 305, 309 n.5 (W.D. Va. 1986) (noting that the Virginia General Assembly likely enacted the 1983 amendments to the nonsuit provision in response to *Yarber*). The explicit language of § 8.01-229E, as amended, applies the tolling provision even to an action recommenced in federal court. *See* Va. Code § 8.01-229E. Accordingly, Defendant's reliance on *Yarber* is misplaced and Plaintiff's action was timely commenced in this Court.

### 2. Fraud Claims

In Virginia, to succeed on a claim for actual fraud, a party must show "(1) a false representation, (2) of a material fact, (3) made intentionally and knowingly, (4) with intent to

18

mislead, (5) reliance by the party mislead, and (6) resulting damage to the party mislead." *State Farm Mut. Auto. Ins. Co. v. Remley,* 270 Va. 209, 219 (2005) (citations omitted).[4] "Virginia law also recognizes an action for fraud where misrepresentations are made without specific fraudulent intent but made with reckless abandon and disregard for the truth." *Hitachi Credit Am. Corp. v. Signet Bank*, 166 F.3d 614, 628 (4th Cir. 1999). Constructive fraud in Virginia differs from actual fraud only in that the "misrepresentation of material fact is not made with the intent to mislead, but is made innocently or negligently." *Id.*

Plaintiff's actual and constructive fraud claims must be dismissed because he fails to plead fraud with particularity as required under Rule 9(b). Hunt fails to describe with particularity the "contents of the false representations" allegedly made by Bennett. *In re Mut. Funds Inv. Litig.*, 566 F.3d at 120. He alleges that "Defendant Bennett continually and fraudulently misrepresented his intention to honor the contract and transfer the royalty interests." (Compl. ¶ 13.) His

---

[4] Virginia "applies the *lex loci delicti*, the law of the place of the wrong, to tort actions." *Milton v. IIT Research Inst.* 138 F.3d 519, 521 (4th Cir. 1998). "Under Virginia law, the 'place of the wrong' is the place 'the last event necessary to make an [actor] liable for an alleged tort takes place.'" *Ford Motor Co. v. Nat'l Indem. Co.*, No. 3:12cv839, 2013 WL 4773977, at *4 (E.D. Va. Sept. 5, 2013) (citations omitted). In this case, the Complaint does not state where the allegedly false representations occurred. Because the Complaint does not provide sufficient facts to allow the Court to determine the place of the wrong, and because the parties have briefed this matter under Virginia law, the Court will apply Virginia law for purposes of Defendants' motion.

complaint does not further describe the contents of the allegedly false statements or relate when or where they occurred.  The Complaint states only that the fraud occurred "at this same time" as Hunt and Defendants entered into the contract.  (Compl. ¶¶ 13, 15.)[5]  Accordingly, Rule 9(b) provides an alternative basis for dismissal of Plaintiff's fraud claims.

### C.  Local Rule 7

Plaintiff contends that this motion should be denied because Defendants failed to meet and confer with Plaintiff's counsel prior to the filing of the motion.  Eastern District of Virginia Local Rule 7(E) provides that "[b]efore endeavoring to secure an appointment for a hearing on any motion, it shall be incumbent upon the counsel desiring such hearing to meet and confer in person or by telephone with his or her opposing counsel in a good-faith effort to narrow the area of disagreement."  E.D. Va. Local Civ. R. 7(E).  Failure to meet and confer does not automatically result in denial of a motion. *See, e.g. Wilhelm v. Cain,* No. 3:10cv109, 2011 WL 128568, at *3 (N.D. W. Va. Jan. 14, 2011); *Frontier-Kemper Constructors, Inc. v. Elk Run Coal Co.*, 246 F.R.D. 522, 526 (S.D. W. Va. 2007). Rather, sanctions for failure to meet and confer lie within a district court's discretion and its inherent power to control

---

[5] In their motion, Defendants also argue that Plaintiff's fraud claims sound in contract, not tort.  (Def. Mem. at 14.)  Because the Court finds that these claims fail under Rule 9(b), the Court will not further address Plaintiff's fraud claims.

its docket. *See Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936); *see also Scott v. Belmares*, 328 F. App'x 538, 539 (9th Cir. 2009). Upon consideration of the record, the Court finds the sanction proposed by Plaintiff's counsel unnecessary.

### IV. Conclusion

For the foregoing reasons, the Court will grant Defendants' Motion to Dismiss.

An appropriate Order will issue.

<table>
<tr><td></td><td>/s/</td></tr>
<tr><td>March 25, 2014</td><td>James C. Cacheris</td></tr>
<tr><td>Alexandria, Virginia</td><td>UNITED STATES DISTRICT COURT JUDGE</td></tr>
</table>